————o————

No. 4053.

(Court of Appeal, Parish of Orleans.)

GASPER CUSACHS vs. JOSEPH DUGUE.

1. Where a creditor enters into an agreement with his co-creditors, for their mutual benefit, *to suspend the execution of a judgment held by him against their debtor* until the termination of a certain suit in which their debtor is interested, but reserves the right to sell said judgment, and does dispose of the same by sale, held: That the purchaser of the judgment so burdened possesses under it, no greater rights than were enjoyed by his vendor, and he is equitably and legally estopped from executing said judgment.
2. The proof disclosing that it was not intended the party should sign the agreement, his verbal acceptance is sufficient and binding.

Appeal from Civil District Court, Division A.

E. A. O'Sullivan, for plaintiff in injunction and appellee Dugue.

Geo. Montgomery, for creditors, plaintiffs and appellees.

E. H. McCaleb and J. B. Rosser, Jr., for Samuel Levy, subrogee, defendant in injunction and appellant,

ESTOPINAL, J. A careful study of the issues involved n this case, convince us that the judgment of the District Court is eminently correct, and our learned brother has, by his industry and talent, favored us with such precise and cor-

132

rect written reasons in support of his finding, that we shall adopt the same as the opinion of this Court, as follows:

"The suit No. 68,328, Joseph Dugue vs. Samuel Levy, heard and decided in Division "D," of this Court, in favor of Dugue, was appealed to the Supreme Court and by that Court annulled and remanded for further trial, Dugue being condemned to pay the costs of appeal. Dugue failing to pay the costs, execution issued in favor of Levy, and on the writ the sheriff seized and advertised for sale all the rights and interest of Dugue in said suit of Dugue vs. Levy, No. 68,328.

Gasper Cusach had a prior judgment against Dugue, No. 63,163 of this Court, and thereon he also levied execution on the rights and interest of Dugue in said pending suit No 68,328, and the sheriff advertised the same for sale.

Shortly before the day advertised for the sheriff's sale, in said two matters, the creditors of Dugue bestirred themselves to effect some arrangement by which Dugue, who was unable to pay, and practically insolvent, as matters then appeared, should be put in a position to prosecute and recover judgment against Levy in said suit No. 68,328, and therefrom, to secure them in their own claims against Dugue.

It was proposed if they could avoid the sale by the sheriff of Dugue's rights in said suit No. 68,328, under the execution issued by Levy for costs of said appeal, and by Cusachs, on his judgment, that Dugue should assign to George Montgomery, Esq., as trustee for his (Dugue's) creditors, sufficient interest in said suit No. 68,328, that they would endeavor to have Cusachs come into the arrangements with them quoad his judgment, and if this could be effected that they would, by contribution, raise the money and pay Levy's judgment for costs of said appeal, and then, that the suit (Dugue vs. Levy, No. 68,328), being freed from said seizure and execution, should be prosecuted to judgment at their expense, with the understanding that the proceeds of said judgment, when obtained, would be received by said trustee, and distributed pro rata among them (his creditors. the Cusach judgment included, if Cusach could be induced to consent thereto).

A projet of such an assignment and agreement was prepared and typewritten, and the creditors called on Mr. Cusachs as his judgment or execution was the first difficulty to be disposed of. The matter was explained and Cusachs expressed

willingness to accede to the arrangement, and referred the creditors to Mr. Kernan, his attorney, leaving all to the latter's determination, and the creditors accordingly called on Mr. Kernan. After discussion Mr. Kernan required that Dugue should sign the assignment and agreement, and declared that neither Cusachs, nor himself, as Cusach's attorney, would sign it, but announced that if these two conditions imposed by him as Cusach's attorney were accepted, that he would prepare a stipulation in regard to Cusach's judgment being provided for and paid pro rata with Dugue's other creditors to be incorporated in said assignment and agreement, a typewritten project of which he had examined, and that then if the execution of Levy against Dugue was provided for, that Cusachs would stop the execution under his writ and abide by said assignment and agreement.

The creditors explained that they would raise the money and pay the Levy judgment for costs, and that Dugue and all the others would sign, and that the clause written by Mr. Kernan in regard to the Cusach's judgment would be incorporated in said assignment and agreement.

In pursuance of the understanding the written stipulation *that the Cusach judgment should share pro rata, was incorporated in said assignment and agreement*, and it was signed by Dugue and by all the creditors, all understanding that Cusachs would not sign, but that he would abide by it. This done, Dugue's creditors raised, by contribution among themselves, two hundred and sixty-nine dollars and fifteen cents ($269.15), the amount of the fi-fa in the sheriff's hands due on Levy's judgment for said costs of appeal and costs of execution, and paid the same to the sheriff in satisfaction of Levy's judgment, and the sheriff returned Levy's writ satisfied.

This done, Mr. Kernan gave the creditors an order to the sheriff to discontinue the sale and execution in Cusachs vs Dugue, No. 63,153.

It should be stated that Mr. Kernan's refusal to have Mr. Cusachs sign said assignment and agreement, was that Cusachs should not be liable for any of the costs or expenses of the prosecution of Dugue's suit vs Levy, No. 68,328, and this the creditors and Dugue accepted.

After all this had been accomplished Mr. Levy determined

134

to purchase from Cusachs the latter's judgment against Dugue in No. 63,153.

Mr. Kernan explained fully all that had been done, but Levy insisted, and with full knowledge of said assignment, agreement, and of Cusach's participation therein and acceptance thereof, purchased said judgment, and forthwith, in execution thereof, caused the sheriff to re-advertise for sale all of the rights and interests of Dugue in the suit of Dugue vs Levy, No. 68,328. Thereupon an injunction was obtained by the trustee of Dugue's creditors, Mr. Montgomery.

In the petition for injunction all the facts hereinabove are recited and the pleas made, that Levy, as the transferee of Cusach's judgment, is bound by said assignment-agreement, and is equitably and legally estopped, just as Cusachs, his vendor, would be, if attempting to act as Levy was doing.

The case after issue joined was tried and submitted, and I have given it most careful consideration.

It seems to me that Levy acquired no greater right in the judgment which he bought from Cusachs, No. 63,153, than Cusach had. *Nemo in alienum transferee profit plus quam ille ipse habet*

Before he sold it to Levy, Cusach had burdened said judgment with the condition *that it should be paid pro rata with Dugue's creditors out of what might be recovered in Dugue's suit against Levy, No. 68,328.* Mr. Kernan had fully explained this to Levy's attorney, and Levy had full knowledge. Cusachs and Levy both knew that the creditors of Dugue on the faith of Cusach's acceptance, as aforesaid, of the said assignment-agreement, had contributed the money, $269 15, which they paid to the sheriff, and from which Levy had been paid by the sheriff,the full amount of his judgment for costs of appeal against Dugue. They both knew that, but for Cusach's conduct in the premises, said creditors would not have paid said $269.15. Having altered their position to their disadvantage, if the promises and representations on the faith of which they did so, are not carried out by Cusachs and his vendee, Levy, the creditors, who are the complainants here, through their trustee, are protected by the equitable estoppel pleaded in their behalf.

When Cusachs agreed, for benefits received amounting to

135

valuable consideration, that the Dugue suit vs. Levy should be prosecuted to judgment by Dugue's creditors, and that his (Cusach's) judgment, should be paid pro rata with the claims of said creditors out of the proceeds of said judgment, he obligated himself not to hinder or prevent the prosecution of said pending suit by seizing and executing Dugue's interest therein. His acceptance of said assignment-agreement with Dugue's creditors obliged him to stay all attempts at execution against Dugue which might impair the rights of Dugue's creditors to prosecute said pending suit, and Levy, when he bought Cusach's judgment, purchased it burdened with the obligation not to execute against said pending suit, but to abide the pro rata distribution when judgment should be obtained therein against Levy. He bought it thus burdened with full knowledge of that fact, and of all that had been done, for Mr. Kernan had fully explained everything when Levy proposed the purchase.

In all these dealings Mr. Kernan acted candidly with all parties. He made full disclosure, and having informed Mr. Levy's attorney of all the facts, there was no impropriety in Cusachs selling the judgment to Levy, and Levy has all the right and title that Cusachs had at the date of its sale to him in the judgment against Levy.

The argument, that no effect can be given to the assignment-agreement as against the Cusach's judgment vs. Dugue, and the right of Levy as purchaser to execute it, because it was a mere proposal to become complete by the signature of Cusachs or his attorney, is overthrown by the proof *that the understanding was that, it was not thus to be signed.* Mr. Kernan expressly declined to sign, on the ground that to do so would bind Cusachs for a part of the costs and expense of prosecuting the Dugue vs. Levy suit, and his proposition to incorporate in said agreement-assignment the clause that the Cusachs judgment should share pro rata with other creditors and to stop the sale, was accepted by Dugue and the creditors, and the sale was estopped and Levy's judgment for costs of appeal was paid by the creditors.

Judgment perpetuating the injunction against Levy and as prayed for, with reservation of Levy's rights, should it become necessary, to execute his judgment after final settlement of any judgment that may be finally rendered in the pending

136

case of Dugue vs. Levy, No. 68,328 of the docket of this Court, for any balance that may remain due to him."

The history of the litigation leading up to and provoking the present injunction proceedings, together with the reasons for and judgment of the judge a quo, as recited above, meet our views exactly, but we cannot dismiss the subject without some remarks in reference to one or two issues pressed before us on appeal.

In argument it was urged by counsel for Levy, defendant in injunction, that the agreement assignment so often referred to herein, and in which Mr. Kernan had inserted a clause affecting the Cusachs judgment was intended to be signed, and that not having been signed, was no contract, and could have no force or effect.

In support of this contention, counsel cites to us authorities, but unfortunately for him, they do not apply here. The proof is abundant from the mouth of every witness, including Mr. Kernan, that there was a verbal acceptance of the agreement, and that none was intended in writing. It may not be doubted that a verbal acceptance of a written agreement is sufficient, especially so, where, as in this case, the conditions contained in the agreement, though not signed by the party to it, were religiously observed, and this statement we make advisedly, because we are satisfied, from the examination of the record, that Mr. Kernan, for Mr. Cusachs, though willing and consenting to join with Dugue's creditors for their mutual protection, he, at all times, appears to have made the reservation that his client (Cusachs), would be bound just as long as heremained the owner of the judgment.

In other words, we think, all things considered, that it was understood that Cusach's agreement with the creditors would not impair his right to sell the judgment.

If not expressly, he impliedly reserved the right to sell his client's judgment.

This he has done, and it is to be hoped to his client's advantage, and the creditors are not hurt, because the purchaser of the Cusachs judgment has acquired no greater rights than were possessed by his vendor.

Moore, J. dissents and will file his reasons in writing therefor.

December 17, 1906.

Rehearing refused January 28, 1907.

Writ refused by Supreme Court March 6, 1907.